Good morning, Richard Levy for the Appellant Ware. This is the Section 8 housing fraud case. I'd like to address the jurisdiction issue. The touchstone for jurisdiction under the U.S. Supreme Court's Rogers case is whether the federal agency has the authority to act in a particular situation. Now, as the evidence showed, the HUD representative said only that HUD would want the city to investigate. Wanting doesn't mean authority. I'd want the city to investigate fraud and abuse, too. I don't even live in Los Angeles. That doesn't confer any authority. You're starting out there. Does that, are you conceding that there's sufficient evidence that these were federal funds? No, no, not at all. The two are intertwined. If you receive, if the government is earmarking federal funds for the particular claimant, for example, in this Court's Italic case, the disaster relief, the city official, the defendant, certified FEMA claims that went to FEMA, the federal government, for individual payment. I think it's probably fair to assume in some cases that if the government is paying, earmark is paying these specific claims, then it also has the authority to act in a particular situation. It could say, we're not going to pay these specific claims. But that's not what we have here. We have no evidence that HUD reimburses for particular claims. And, in fact, we don't even have evidence on this record that HUD provides anything more than administrative costs. Well, with the testimony that's cited, I don't know that there's anything more on the funding, but this is Baldwin. It says HUD would be an umbrella organization. HUD is the source of all the funding and the program regulations for assisted housing. But it's the source of all of the funding. Right. There are two points in response to that, Judge Bishop. Number one, that is so plainly and manifestly wrong, that HUD could be the source of all assisted housing in the United States, that it can't possibly constitute substantial evidence. That's just a sloppy statement by the HUD person that can't possibly be taken at face value. But second, Judge Fischer, even if HUD were the source, I mean, we know in this Court's Ombud Puccini case HUD was the source of the administrative fees, administrative expenses. That's not enough. Let's say, let's go even further and say that HUD's the source in the sense of block grants. It gives block grants to the city housing authority, and then the city does the individualized disbursement. Even that would not be enough under Rogers, because HUD would not have authority in the particular case. Now, I give an example where it would. Let's say you have 1,000 cases of alleged bubonia wares. Then HUD, which we're presuming gives these block grants just for argument's sake, would say, hey, we're the ones who approved your administrative plan. That's in the evidence. You've got these thousands of cases of fraud. You need to do something about that, or we're not going to approve your administrative plan. Then HUD has the power to act in the sense of wholesale fraud. But there is no evidence other than wanting that HUD could say, okay, city, we see bubonia ware has cheated you out of a few thousand dollars. We want you to investigate. We want a report on our desk in 30 days, and if not, we're going to take such and such action. There's no evidence that HUD would do that. No evidence that HUD has the power to do that under the evidence of trial. And I point out, although, as I say in the reply brief, I don't believe the CFR sites of the government support their case, the CFR sites were not in evidence in this case. CFR sites were used in the Ficcicini case because that was on a motion to dismiss. So who knows what the court took judicial notice of. But this is evidence. But, counsel, are you arguing that the district court did not have jurisdiction over this prosecution as a matter of law, or are you arguing that there was insufficient evidence? Insufficient evidence for the jury. And that would be on plain error review. Right, right. You have to show that there was plain error as to the facts here. That's right, Judge Bobby. But as I discuss at the opening brief in Section Issue 1A, this Court has repeatedly held that for substantial evidence, plain error review is pretty much equivalent to substantial evidence review. You can't get any more strict than substantial evidence. And so I'd rely on those sites. So I don't think the plain error standard is dispositive on this issue. I think it's equivalent to substantial evidence. Jurisdiction is not a technicality. It's what turns an everyday fraud against some city official or city agency into a Federal felony. And one of the cases from the Eleventh Circuit I cite, the Blankenship case, gives some very vivid examples of what would happen if this, if Section 1001 is expanded to cases such as I believe this one is. One example of Blankenship is if you go to a neighboring city and you lie about your residence, you can get a library card from that city. If the city gets the block grants from Congress for housing for a library, library revitalization, that is suddenly a Federal crime. Every local crime against a city agency, suddenly you can be held off into Federal court. So as Ficini indicates and as the Blankenship case indicate, there's got to be some sort of a mechanism in place. And there is a difference, counsel. Libraries are quintessentially organized by States and municipalities. Section 8 is a Federal housing program. We start at the outset that she has defrauded a State that is helping to, that is participating in and administering a Federal subsidized housing program. That's true, Judge Feigin. But then we get back into the facts of the Ficini case. Unemployment insurance was undoubtedly a Federal program created by the Federal government, administered by the State. The Federal government approves the administrative plans, subsidizes the administrative plans. And even that is not enough because at bottom, just as with the library card case, it's still a State program. The State, it's the State that decides how much we're going to pay and the State that writes the check to the landlord. No evidence that the Federal, that HUD ever writes a check to the landlord. So it's really equivalent to, I would say it is equivalent to the library card case. Or the other one in the Blankenship case is the UPS driver. The government sends him on a, pays for a two-day delivery and he waits three days for reasons of his own. Suddenly that becomes a Federal crime because he's defrauded the government out of a two-day, two-day delivery. And there the government has actually paid the actual check. So I think it's a serious issue of where we draw the line. And it may be in other cases that there might be evidence in other cases in other cities, even in this city, that HUD actually has greater involvement. But that's utterly irrelevant to this case because it's the government's job to put on their best case here. And the district court itself noted, wait a second, where is the evidence that the Federal government provides the funding? And through an innocent resurrection election, the court was satisfied. But in fact, there was no evidence of that. Other than- Would you address the jury instruction? I'm sorry? Would you address the jury instruction? Yes, yes. The jury instruction, I can see it again, is on plain error. With the jury instruction that absolutely misstates the law, this was an easy case for the jury because there was no dispute that the city administered a Federal program. Everybody admitted that. It was uncontradicted. So why does the jury have to even spend 30 seconds considering Federal funding, this or that, when they can just take the shortcut and rely on this, really, a mandatory presumption in the jury instruction? So that's highly prejudicial. It's not supported by the law. The sole case that the government cited, Petula, the Seventh Circuit case, said you may have jurisdiction even if the city just administers the program. But that's other things being equal. That is a far cry from saying you do have jurisdiction when the city administers the program. And, of course, as we see in the Puccini case, the State administered a Federal program, and that was not enough for jurisdiction for the State-paid claimants. I'll just make one more point on the – and I would just add, Judge Fischer, obviously the reason I'm focusing on jurisdiction rather than the jury instruction is because of the retrial issue. Retrial would be barred for the insufficient evidence, so that's a better issue for us. No, I understand, but I understand what your argument was. Yes. Thank you. If I could just address the double jeopardy issue. I just want to make one point. The key, as I discussed in the reply brief, is the leapfrogging. You have the right under the Supreme Court's Crisp case to go to trial with the jury you selected. And part of the jury you selected is you've got your jury, your next best are these men in the back, the veneering men in the back. You don't want those people. Now, under this Court's procedure, we're allowing someone in the back to leapfrog over the alternate, and that disrupts the reasonable expectations, the right. Didn't you agree to that procedure? No, Judge Strom. He agreed – the defense counsel agreed to excusing them for three, but it was the jury selection rather than replace number three with the alternate. Now, counsel was silent. He did not object. But as I discussed in the opening brief, that is not enough to constitute consent to a mistrial, to an implied mistrial. So he agreed – you're right, he agreed to the initiation of the problem, which was excusing number three, but not to the procedure thereafter. So if I could reserve my time. Thank you. Yeah. May it please the Court. Good morning, Your Honor. It's Chris Burpell. I'm with the plaintiff and appellee in the United States. Your Honors, respectfully, the appellant, both with respect to the jury instruction – excuse me – both with respect to the double jeopardy argument and with respect to the jurisdiction and the materiality arguments, appellant is proffering a technical – a hyper-technical reading of the applicable law. With respect to the jurisdictional issue, appellant identifies two grounds under which the Court – two necessary grounds under which the Court can identify jurisdiction for purposes of Section 1001. The reading here, however, stands in contrast to the Supreme Court's own decision in Rogers. The Court there identified that for jurisdictional purposes, Section 1001 analysis should not be constrained or technical. The overriding question is whether or not a particular Federal Department or agency has the power to exercise authority in a particular situation. There is law in this circuit that does lay out the parameters, and it's no secret to the government. So where's the evidence that there were Federal funds going out the door in this particular program? And there were – in at least two situations, Your Honor, witness Baldwin identified that the Section 8 benefits being received by the defendant in this case were from the Federal FISC. The first and most important comes from that piece of cross-examination testimony. And as appellant has identified there, the witness stated that Section 8 – excuse me, Section 8 housing was provided by HUD. HUD is the source of all funding and program regulations for assisted housing in the United States. Is that true? All assisted housing in the United States comes from HUD? It's true within the context of this answer, Your Honor. The appellant's reading takes this proposition somewhat out of context. Let's read the context, okay? Yes, Your Honor. It says, besides Section 8 housing, back in year 2000-2001, around that time, there were other housing assistance programs besides Section 8. Is that correct? Yes. Okay. One was just simply called HUD. No, HUD would be an umbrella organization. HUD is the source of all of the funding and the program regulations for assisted housing in the United States. From that, we, the jury, that's the government's evidence that this particular program was administrating and dispersing federal funds on Section 8. That is the most direct evidence as to the funding question. Witness Baldwin had testified extensively on direct examination that HUD regulates the disbursement of Section 8 benefits. Witness Baldwin had said that HUD is the one that sets the eligibility standards, requires annual income recertification, and then requires the local housing authorities to terminate program assistance when those certifications establish ineligibility. So Witness Baldwin already testified extensively to a regulatory ineligibility scheme for Section 8 recipients. Witness Baldwin also identified that on those annual recertification forms, there's a Section 1001 warning. When I asked him about that warning on direct examination, Witness Baldwin said the reason that that warning is there is to notify people that there is a penalty, a federal penalty, for making false statements in connection with that form. It's within that context, Your Honor, that during direct examination, Witness Baldwin had only ever talked about HUD programs and about the housing authority of the City of Los Angeles' disbursement of Section 8 benefits. Maybe you could just also address, there was a specific question not to Baldwin but to Henderson that intrigued me. It says, what steps might HUD take if it were to find out that an unqualified participant was receiving Section 8 benefits from a local housing authority? And the answer was HUD would make an inquiry into the housing authority's administrative plan, and we would want them to investigate why this particular person or participant is receiving benefits through subsidy in their housing when they are not qualified to do so. That doesn't sound as if HUD is doing anything more than overseeing it. We have Ficini, which said that, recognize that in an unemployment compensation scheme where some of the money clearly was coming from the federal government but not all, that even when the federal government was funding the agency for administrative purposes that that did not require, that that did not qualify. I know that the statute was amended after Ficini, but if that's all that is in there about what HUD is doing with respect to the Los Angeles program, why is that enough to carry the burden that there is actual, true HUD involvement in the program such that it meets the requisite jurisdictional standard? Because in this case, Your Honor, there are two critical differences between the subject matter of the first group of Ficini statements and the Section 8 program at issue here, even in light of Ms. Henderson's testimony. In Ficini, this Court emphasized first that not one cent of the benefits received by the recipients in the first group of false statements were paid from the federal FISC. But there's no evidence in this case, except for a Baldwin statement, that the money actually paid in this case to this person were federal dollars. You have to infer from that grand statement that all the money that came out of this Section 8 program in Los Angeles, all of it was federal money. As well as from Witness Baldwin's statements that Section 1001 liability was a risk for those who made false statements in connection with it. Well, that's true. But that's true if, in fact, the money is coming from the government. The other critical difference, Your Honor, between the Section 8 program here and the first group of Ficini false statements was that outside of approving a state's unemployment administrative plan, the Secretary of Labor had no further authority. And this Court emphasized that the Department of Labor did not establish eligibility standards as to the disbursement of those funds. And really had no, there was no regulatory oversight following that initial approval of the administrative plan. In this case, there is testimony that says that HUD establishes, again, the initial eligibility requirements, and thereafter is the one that requires the local housing authority to recertify annually participants in Section 8. That testimony was unequivocal on direct examination. And Witness Baldwin made clear that those were HUD requirements and not local housing requirements. In that sense, Your Honor, the facts of this case are distinguishable from the first group of Ficini statements and are more like the Stanford case from the Seventh Circuit that this Court cited approvingly in its en banc decision. In Stanford, the false statements remain in connection with an AFDC program. And there, in the Seventh Circuit, that Court emphasized that in that particular case, Department of Health and Human Services set eligibility requirements and continuing regulatory presence over the disbursements of AFDC funds. Now, if the jury instruction in Ficini had said that all the jury had to find was that the local entity, Oregon in that case, was administering a Department of Labor program, would that have been an accurate statement of the law for purposes of Ficini? Within the facts of that case, no, Your Honor. Our argument here is that within the facts of this case, and given the primary thrust of that jury instruction, that this instruction was not a plainly erroneous misstatement. Well, it doesn't even track the source on which it was based. Correct. There it said, if the false statement was made to a local entity administrating a totally or partially federally funded program, then such a statement may also be within. So what was the necessity, as counsel pointed out, what was the necessity of any evidence coming in about funding or oversight when there was no dispute in the record that this was an agency administering a HUD program? Why wasn't that just a directed verdict for the government? Or a mandatory presumption. Mandatory presumption. I, well, again, Your Honor, the reason that that instruction was proffered was to make clear to the jury that the statement didn't have to be made to the federal agency behind the program. And that was a correct statement of the law. In this particular instance, Your Honor, I would insist that, respectfully, that the instruction, while it does not track, concededly, it does not track the language of Petullo, was not plainly erroneous. There certainly, there's enough, there's enough of an argument about whether or not, within the facts of this case, a federally administered program was sufficiently qualified based on the testimony that was received to meet the jurisdictional standards of Section 1001. In addition, I would emphasize, Your Honor, that jurisdiction was simply not a material issue at trial. At no point during the opening or closing arguments did either counsel focus on the extent of the relationship between the Section 8 program benefits that the recipient here received and HUD's administration or funding. Defense counsel did not ask, really, any questions about the sufficiency of the connection between the benefits received by the defendant in this case and HUD with respect to any of the local housing authority witnesses or the HUD witness, Ms. Henderson. As the Supreme Court has made clear within another plain error case that was recently announced, U.S. v. Marcus, in this particular situation, it's not simply speculative injury that will suffice for plain error purposes. The defendant must show in this case that there was some sort of prejudice that resulted to meet the last two prongs of plain error analysis, that something within the jury's determination would have been otherwise. It's pretty hard to think that if the jury wasn't focused on the parameters of the jurisdictional predicate, that that jury instruction, you said it wasn't even directed, in fact, at the jurisdictional question, would have guided them to an examination of either the funding or administrative degree of administrative oversight to meet the test. Even if the jury's attention was directed in that particular direction, Your Honor, there simply wasn't anything, there wasn't any dispute between the parties as to the extent to which the government had met that threshold. Again, there was no argument in the record about the sufficiency of the connection between the program benefits that the defendant received here and HUD's administration and funding. With my remaining time, Your Honor, Your Honors, I'll just briefly address the double jeopardy analysis. Again, the government's position is that appellant is proffering a hyper-technical reading of this Court's and the Supreme Court's double jeopardy jurisprudence. What the appellant is insisting here is that there was a per se mistrial declared once the district court replaced juror number three. As the Richardson case makes clear, and as this Court's decision makes clear in Trigg, the overriding analysis is whether or not there was a termination of jeopardy once that jeopardy had attached when the jury was initially sworn. Before the taking of any testimony, before the presentation of any witnesses, and really in the space of a very small recess, the government sees that it's very difficult, or the government insists that it's very difficult here to make the argument that there was any termination of jeopardy under the principles that have been recognized as being vindicated by the double jeopardy clause. If there are no further questions, Your Honors, the government will submit. Thank you. Thank you. On the instructional issue, the government's defending the instruction by citing another part of the instruction that's not even at issue. I mean, the part of the instruction at issue is the second sentence dealing with mandatory presumption. Well, who raised, since it wasn't objected to on the jurisdictional ground, where was jurisdiction surfaced in the course of the trial? Through Baldwin's testimony that we would want. Did defense counsel contest that there was enough evidence for jurisdiction No. I can see, Judge Fischer, that this was not a focus of the argument. But it is so manifest under Fettini that administration is not enough, that that's what makes the error plain. I mean, we know it's an error. Even though it's being tried throughout the trial with nobody challenging the fact that it met the jurisdictional requirements. Right. Because an error can be plain even if it's not the focus in a fast-paced trial. You know, counsel has to make decisions about what he's going to try to focus on given Ms. Ware's testimony. There's no inconsistency between an error being plain and counsel not addressing it or not addressing it. That suggests that it was a matter of strategy. I'm sorry, Judge Baldwin. That suggests that it was a strategic decision not to raise the jurisdictional question. Oh, no. But only in the sense that any decision on what you're going to focus on is going to be strategic. But because you focus on A, B, and C, it doesn't mean you're conceding. You're conceding everything else. It's pretty hard to come up with an argument that it's plain error, because if it's plain error for the district court, it surely was plain error for counsel as well. Well. But if counsel is making strategic decisions, then it wasn't plain error. Oh, no. But there's no evidence of attempt. It's a miscalculation of strategy, but miscalculation of strategy is not grounds for reversing. Right. Right. But I'm not saying that he sat down and made a tactical decision, I'm going to ignore this, and I'm going to address other things. But inherently, in any argument, especially in a two-day bench, a two-day jury trial where everything has to be done now on the second day, wrapped up, the fact that he focuses on one thing doesn't make the error less plain for the jury, just as it didn't make the error less plain for the judge. The judge immediately grasped the error. Under Ficini, the judge should have immediately grasped the error. So the error is plain whether, and whether counsel grasped it, I would submit would be irrelevant for plain error analysis. There's error. But you get the plain error if there had been an objection. Right. That's, well, that's absolutely true. I can see that. Well, I was just trying to help you. Okay. Unless the Court has other questions, I'll submit. Thank you. Thank you. Thanks, counsel. Okay. And we will stand in a short break, probably about ten minutes, and resume after that. All rise. The case was argued and submitted.
judges: Strom, Fisher, Bybee